UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
--------------------------------------------------------x
SHENGLI ZHANG                         :
                                      :
              Plaintiff,              :    CIVIL ACTION NO.: RWR-07-1209
                                      :
       v.                             :
                                      :
MICHAEL CHERTOFF, et al.              :
                                      :
              Defendants.             :
--------------------------------------------------------x
```

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Plaintiff, Shengli Zhang, has moved for Summary Judgment for mandamus relief ordering the Defendants to timely adjudicate his Application for Asylum and for Withholding of Removal. (See Exhibit filed at Paper 11-2). The Defendants, in their official capacity as heads of the U.S. government agencies, in particular the U.S. Citizenship and Immigration Services ("USCIS")[1] and the U.S. Department of Justice, have opposed Plaintiff's Motion for Summary Judgment and filed a Cross Motion for Summary Judgment in their own favor. For the following reasons, Plaintiff remains entitled to summary judgment granting mandamus relief as requested, and Defendants' Motion should be denied for the very same reasons. This issue has been completely and repeatedly addressed by the parties in multiple pleadings and is ripe for a decision by this Court.

Defendants have filed a series of similar pleadings with the Court, beginning with their

---

1 The terms Immigration and Naturalization Service ("INS"), Department of Homeland Security ("DHS") and U.S. Citizenship & Immigration Services ("USCIS") as used herein, unless referring to the historical facts, all refer to the same administrative agency responsible for deciding asylum matters.

Motion to Dismiss (Paper No. 12, which incorporated Paper No. 8) in which they initially cited Telecommunications Research and Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (hereinafter "TRAC") to argue that the REAL ID Act removes jurisdiction from the U.S. District Courts.  As addressed by the Plaintiff in his Response in Opposition (Paper No. 13), however, this is not the case of an appeal of a final agency decision as Defendants refuse to make a decision.  Instead, as is clear from the Amended Complaint, this is a case of mandamus and the Defendants failed to inform the Court of the relevant—and recent—mandamus caselaw, namely Liu v. Novak, Civil Action No. EGS-07-263 (D. D.C. August 30, 2007)—which applied TRAC—and was decided by this Court against this same branch of the Justice Department and Defendant Department of Homeland Security. Defendants submitted a Reply brief (Paper No. 17) and a supplemental filing (Paper No. 18) in which their analysis has been incorporated in Defendants' Motion for Summary Judgment.

Plaintiff filed a Motion for Summary Judgment consistent with this Court's decision in Liu, in which the Court denied a Motion to Dismiss by these same Defendants and granted a Motion for Summary Judgment in favor of the Plaintiff. (Paper No. 16).  In his Motion, Plaintiff cited and submitted relevant parts of the Defendants' "Affirmative Asylum Procedures Manual" (hereinafter the "Manual") that was in effect at all relevant times. (Plaintiff's Motion for Summary Judgment at Exhibit (3), Paper No. 16-5).

Now, Defendants have incorporated their previous analysis in submitting Defendants' Cross-Motion For Summary Judgment And Opposition To Plaintiff's Motion For Summary Judgment (Paper No. 22 and repeated at Paper No. 23), and certain Exhibits in support of their pleadings (Paper No. 24)  Importantly, **the relevant facts for the issues of mandamus and as determined in the applicable case in Liu have not been disputed by the Defendants**.

The essence of Defendants' argument is that because the Defendants had before issued an order for removal dated November 7, 2000, the Court lacks jurisdiction over his Application for Asylum because they claim the Plaintiff's ***sole*** remedy lies with the very immigration judge who erroneously denied his initial request for asylum and that his ***only*** choice is to file a ***second*** Motion to Reopen and Reconsider with the Defendant USCIS  Defendants continue to claim that the U.S. Court of Appeals has exclusive jurisdiction to hear an appeal of a final decision of the administrative agency, and thus this U.S. District Court lacks jurisdiction.

Plaintiff has previously pointed out the central argument that there has been no final decision of an administrative agency and that Defendants' have made it clear that they are determined to make no decision at all on Plaintiff's application.  **Under the governing statute and regulations,** see discussion *infra*, Plaintiff has the right to apply to the Defendant USCIS for asylum, and that Defendant has a non-discretionary duty to process his Application and at the least determine if the requisite changed circumstances are present, and then to make a determination on his Application.  Under the facts of the instant case, contrary to Defendants' assertion, the recent precedent of this very court in Liu v. Novak, Civil Action No. EGS-07-263, p. 17-18 (D. D.C. August 30, 2007) must be deemed to control.

The starting point for this analysis must be Plaintiff's I-589 Application for Asylum dated May 1, 2004 (Paper No. 11-2) for which this review is sought, and for which, under Liu, this Court has the jurisdiction to exercise mandamus to require USICS to take action. The Defendants have now admitted in their Statement of Material Facts and Memorandum in Support of their Motion for Summary Judgment (Paper No. 23) that they have taken no action whatsoever on Plaintiff's Application.  They maintain they have no duty to do so.  If, as the governing law and regulations make clear, they have such a duty, they are in violation and this Court has the power

3

to remedy this injustice.

The Plaintiff's right to file a new application for asylum is contained in the statute 8

U.S.C. § 1158 and procedures promulgated under the statute, notably as cited and relied upon by

the Defendants as "The Affirmative Asylum Procedures Manual, of the Office of International

Affairs, Asylum Division (February 2003) (Manual) attached to Plaintiff's Motion for Summary

Judgment, as Exhibit 3." (Paper No. 23 at p. 6). Defendants then properly state:

Asylum is governed by 8 U.S.C. § 1158. Section 1158 states in pertinent part:

> (a) Authority to apply for asylum
> (1) In general
> Any alien who is physically present in the united States or who arrives in
> the United States (whether or not at a designated port of arrival and including an
> alien who is brought to the United States after having been interdicted in
> international or United States waters), irrespective of such alien's status, may
> apply for asylum in accordance with this section or, where applicable, section
> 1225(b) of this title.
> . . . . . .
> (C) Previous asylum applications
> Subject to subparagraph (D), paragraph (1) shall not apply to an alien if
> the alien has previously applied for asylum and had such application denied.
> **(D) Changed circumstances**
> **An application for asylum of an alien may be considered,**
> **notwithstanding subparagraphs (B) and (C)**, if the alien demonstrates <u>to the</u>
> <u>satisfaction of the Attorney General</u> either the existence of changed circumstances
> which materially affect the applicant's eligibility for asylum or extraordinary
> circumstances relating to the delay in filing an application within the period
> specified in subparagraph (B).

8 U.S.C. § 1158 (Emphasis Added by Defendants) (Paper No. 23 at p. 7-8).

Defendants, however, erroneously make the argument that the existence of changed

circumstances under the statute requires that it shall be "demonstrated to the satisfaction of the

Attorney General" but that "§ 1158 imposes no duty on the Attorney General to act." Id. Non-

litigation counsel for Defendant USCIS also makes this absurd argument in a letter recently

submitted to undersigned counsel and which was included as an exhibit by Defendants as Paper

No. 24-4.

Defendants should be aware of their own history and the application and history of the statute.  As stated on the "About Us" website of Defendant USCIS, "On March 1, 2003, service and benefit functions of the U.S. Immigration and Naturalization Service (INS) transitioned into the Department of Homeland Security (DHS) as the U.S. Citizenship and Immigration Services (USCIS)."  ***Exhibit (1)***.  The INS was formerly under the Attorney General in the Department of Justice.  In fact, the case submitted by the Defendants recognizes this change in the authority for matters under the statute.

> Although the text of 8 U.S.C. § 1255 refers to the **Attorney General**, the discretionary authority to adjudicate adjustment applications and promulgate regulations has been transferred to the Secretary of Homeland Security and the United States Citizenship and Immigration Services. See 6 U.S.C. §§ 271(b), 557. **The Court will therefore refer to USCIS as the entity with discretionary authority**.

Jianping Sun v. Gonzales, Civ. Act. No. 07-0504 (JDB) at fn. 1 (Paper No. 18-2)(emphasis added).

In accordance with the statute, the USCIS has implemented procedures for processing asylum applications, **including the I-589 Application for Asylum of Plaintiff Zhang**, that are published in its Affirmative Asylum Procedures Manual, Office of International Affairs, Asylum Division (February 2003) (hereinafter "Manual"), the manual in effect when Mr. Zhang filed his application and when this suit was filed.  (Paper No. 16-5).  The authority of this manual and this version was acknowledged by Defendants in their brief at Paper No. 23 at p. 6. The Manual was replaced in approximately February 2008 with a new version dated November 2007.  On the relevant procedural issues before this Court, the replacement version does not materially differ from the February 2003 version.  The applicable pages from the new version

are included herein at **_Exhibit (2)_** as located on the USCIS website as provided at **_Exhibit (3)_**.

The USCIS Manual provides that any alien previously denied asylum by an immigration judge or BIA may not apply for asylum "unless the alien establishes the existence of changed circumstances that materially affect the applicant's eligibility for asylum." (Exhibit (2), Manual P.1 at 122; P.3 at 127). Further, the Manual provides that an applicant previously denied asylum by an IJ or the BIA "may file his/her I-589 with a service center or within the asylum office directly." (Exhibit (2), Manual P.3.a. at 127). The application "should be forwarded to the asylum office having jurisdiction over the applicant's address for input into RAPS." Id. Moreover "On the **same day of receipt,** an I-589 initially filed at an asylum office is date-stamped and brought to the attention" of the appropriate office to determine whether the application fits into a category for which filing is permitted and then review for completeness, and return to the applicant if not complete. Id. As noted above, individuals who have been previously denied asylum are eligible to reapply if "there are changed circumstances which materially affect the applicant's asylum eligibility." (Exhibit (2), Manual P.3.b. at 128).

The procedures that the Defendant USCIS are required to use are set forth in the Manual. The Manual provides that the procedure for determining changed circumstances includes an interview with an asylum officer and review of the applicant's record to determine if there has been a material change in circumstances. "In order to determine whether there are changed circumstances that materially affect the applicant's eligibility for asylum, the Asylum Officer interviews the applicant and reviews the record regarding the previous application (including any findings made by EOIR that may be in the file) for a thorough understanding of the basis for the applicant's claim." (Exhibit (2), Manual P.3.e. at 129-30). "[T]he interview focuses on whether any changed circumstances have occurred <u>after</u> the applicant was denied asylum by the

EOIR that may materially affect the applicant's eligibility for asylum, and any information needed to make an asylum eligibility determination if changed circumstances are established." Id (emphasis in original). Finally, "Asylum officers make the determination of whether there are changed circumstances" according to set guidance procedures. (Exhibit (2), Manual P.3.f. at 130). The Defendant USCIS is required to provide some formal explanation containing certain prescribed detail regarding the Asylum Officer's finding, whether the applicant does or does not establish changed circumstances. Id. Asylum Office personnel must then process the approval, referral or denial of an applicant, which determination must then be reviewed by HQASM/QA. (Exhibit (2), Manual P.3.h. and P.3.g. at 130).

Hence, Defendants' argument that Plaintiff is not eligible to reapply for asylum based on changed circumstances because the Attorney General has not yet determined whether there exists material changed circumstances must fail, because that determination (delegated to USCIS) is his right immediately upon submission of his application. None of the foregoing mandatory steps occurred. These procedures are not discretionary steps, although the outcome may be discretionary. Defendants' failure to process his application, review his file, interview him to determine the presence or absence of material changed circumstances, make a determination in writing with an explanation is subject to the mandamus power of this Court under the Liu precedent and analysis.

Liu is certainly applicable because it teaches that where, as here, there is an administrative duty to act, this Court has the mandamus power to compel such actions. Here, far worse than the limited activity in Liu, **the USCIS has admittedly taken no action** whatsoever on Plaintiff's application. Indeed, until this suit was filed, the USCIS failed to notify him that it was declining any action in his case, failed to even open a file, and failed to provide any asserted

reasons such as lack of jurisdiction for its position. Defendants, in their pleadings and letters, have made it clear that they have no duty or intention to act in the future without an Order by this Court.

For the same reasons, Defendants' reliance on the unpublished case of <u>Jianping Sun v. Gonzales</u>, Civ. Act. No. 07-0504 (JDB) (Paper No. 18-2) is on its facts inapposite. There, unlike here, the Defendant USCIS did open a file and was in the process of performing a security investigation. The Court's analysis in this unpublished case demonstrates that it is clearly inapplicable to the mandamus issues in the instant case:

> In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS. Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review a discretionary decision or action of USCIS, and an "action" includes any discretionary act or series of acts within the adjustment of status process (including the pace of completing various security checks).

<u>Jianping Sun v. Gonzales</u>, Civ. Act. No. 07-0504 (JDB) (Paper No. 18-2).

In the instant case, in stark contrast to <u>Sun</u>, absolutely none of the initial non-discretionary actions have been taken. Thus Defendants' willful refusal to act, or even acknowledge Mr. Zhang's Application, cries for the exercise of mandamus to compel action by the Defendants. Indeed, the tenor of the Court's opinion in the <u>Sun</u> case strongly implies that on these facts, the absence of any action, not a seemingly lengthy delay, would have resulted in a finding of mandamus jurisdiction as it found in <u>Liu</u>. Additionally, and importantly, in the instant case, the agency has promulgated extensive mandatory procedures and regulations for processing the Plaintiff's Application, which the Defendant USCIS has failed to follow.

Under the Defendants' scenario, Plaintiff Zhang, or any similarly situated alien whose initial claim has been rejected, however wrongly, has but one avenue to assert his rights to apply

for asylum due to changed circumstances: to reapply by motion to the very administrative judge who rejected the initial application, and in this case committed the very errors that even the Appeals court could not correct because that record is frozen prior to the admission of evidence that even Defendants have admitted would entitle him to asylum. No plaintiff can be so limited as to have only a right to apply *ad infinitum* to the very one who wronged him or her at the outset without a final decision or judicial review. Moreover, Defendant's absurd reading of the applicable statutory scheme and ignorance of their own history and promulgated regulatory procedures demonstrates that only an order of mandamus by the Court will compel the Agency to action.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted, and Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

CONWELL, LLC

__/s/_____
Scott A. Conwell (Bar No. 468989)
    scott@conwellusa.com
2138 Priest Bridge Court, Suite No. 4
Crofton, Maryland 21114
TELE: (410) 451-2707
FAX: (410) 451-2706

*Attorney for Plaintiff*

Dated: March 10, 2008

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _10th_ day of _March__, 2008, a true and correct copy of the foregoing Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment was served via ECF on the following counsel of record:

> Jeffrey A. Taylor
> Rudolph Contreras
> Heather Graham-Oliver
> U.S. Attorney's Office
> Judiciary Center Building
> 555 Fourth Street, NW
> Suite 4-4808
> Washington, DC 20530


> ____/s/_____
> Scott A. Conwell



Home > About USCIS

# About Us

Welcome to U.S. Citizenship and Immigration Services.

On March 1, 2003, service and benefit functions of the U.S. Immigration and Naturalization Service (INS) transitioned into the Department of Homeland Security (DHS) as the U.S. Citizenship and Immigration Services (USCIS). USCIS is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include:

- adjudication of immigrant visa petitions;
- adjudication of naturalization petitions;
- adjudication of asylum and refugee applications;
- adjudications performed at the service centers, and
- all other adjudications performed by the INS.
- Fifteen thousand (15,000) federal employees and contractors working in approximately 250 Headquarters and field offices around the world comprise the USCIS.

This About Us section of USCIS.gov (see the buttons on the left) provides information to introduce you to U.S. Citizenship and Immigration Services within the Department of Homeland Security. It also provides information about various administrative and management functions and responsibilities now within DHS that were once in the former Immigration and Naturalization Service.

From this section, Congressional offices can still find out how to file a request for information. You can also learn how to file an immigration-related Freedom of Information/Privacy Act (FOIA) request.

This page can be found at http://www.uscis.gov/aboutus



About the Office of Citizenship

About the Refugee, Asylum, and International Operations Directorate

Transformation Program Concept of Operations (730KB PDF)

USCIS Organizational Chart (284KB PDF)

USCIS Strategic Plan (1077KB PDF)

# U.S. Citizenship and Immigration Services

REFUGEE, ASYLUM, AND
INTERNATIONAL OPERATIONS DIRECTORATE
ASYLUM DIVISION

AFFIRMATIVE ASYLUM PROCEDURES MANUAL

NOVEMBER 2007



Under reform, after an interview has taken place, an AO finds an applicant: (1) eligible for an approval of asylum; or (2) ineligible for an approval of asylum. If an applicant in category (2) appears deportable or removable, the Asylum Office provides him or her a *Referral Notice*, indicating the reason(s) for the referral, and initiates removal proceedings by scheduling a hearing in Immigration Court and issuing an NTA. A referral is not a final decision in the case, and an Immigration Judge will hear the applicant's claim anew. An applicant in category (2) who is in-status receives a *Final Denial* letter without an accompanying NTA at the time the final decision is rendered.

## 2.    Applications Interviewed before January 4, 1995 but Still Pending a Final Decision

There may be still be a small number of asylum applications pending for applicants who were interviewed prior to January 4, 1995, but whose applications are still pending a final decision. If the Asylum Office marked the case with a special group code, then the reason for its pending status may result from an HQASM policy that suspended final adjudication of the I-589. If a special group code is not present, Asylum Office personnel process the case for a final decision according to the following instructions:

### a.    Applicants Eligible for Asylum Status

If the applicant is eligible for asylum status, the Asylum Office prepares the case for an approval. In some cases, an additional interview may be required, and all security checks must be complete and current before issuing the approval.

### b.    Applicants Ineligible for Asylum Status

An applicant who was interviewed prior to reform may have an expectation that his or her case will be processed according to procedures in place at the time of interview. However, because current regulations only give an AO the authority to deny asylum to an applicant who is in-status, a *Final Denial* cannot be issued to an applicant who is deportable or removable. Because the applicant's prior interview occurred over 10 years ago, the Asylum Office should re-interview the applicant and process the case per regular reform procedures.

*Different rules are in place for ABC applicants. See ABC-NACARA Procedures Manual for more information.*

### c.    Evidence of Deportability/Removability

If required by the Executive Office for Immigration Review in the jurisdiction of the Asylum Office, Asylum Office personnel may have to obtain evidence of deportability or removability from documents other than the pre-reform I-589, particularly in the case of a no-show. Examples of possible sources of evidence are:

| Entered Without Inspection | Admitted to the U.S. |
|---|---|
| • I-765 applications in the file | • IBIS SQ94 data |
| • CLAIMS data | • I-94 and/or passport, when available |
| • I-213 (completed by an office other than asylum) | • I-765 applications in file |
| | • CLAIMS |

In addition to the above supporting evidence, the Asylum Office may be required to prepare an I-213, even if not normally required with the referral of a reform case. An I-213 can be prepared with the RAPS Forms Generation Module on the OSCG/OSCP screens.

# P.    PROHIBITIONS ON FILING AN ASYLUM APPLICATION

Certain aliens are not eligible to apply for asylum; however, only an AO or an IJ can make this determination after an interview has been conducted. Therefore, the Service Center and the Asylum Office accept asylum applications without regard to whether a prohibition on filing may apply. *See* Langlois, Joseph E. Procedures for Implementing the One-Year Filing Deadline and Processing Cases Previously Denied by EOIR, Memorandum to Asylum Office Directors, et al., 4 January 2002, 14p.

<div style="float:right">8 C.F.R. 208.4</div>

## 1.    Categories of Aliens who May not Apply for Asylum

The categories of aliens who are prohibited from filing for asylum are listed below. These prohibitions only apply to an applicant who applies for asylum on or after April 1, 1997:

- Any alien who has not filed an application for asylum within one year of last arrival in the U.S., unless the alien establishes changed circumstances that materially affect his or her eligibility for asylum or extraordinary circumstances directly related to the delay in filing.
- Any alien who previously has been denied asylum as a principal applicant by an Immigration Judge or the BIA (EOIR), unless the alien establishes the existence of changed circumstances that materially affect the applicant's eligibility for asylum.

<div style="float:right; width:25%">If the applicant was a dependent on a prior I-589 that was denied by the IJ or the BIA, the prohibition on filing does not apply. 8 C.F.R. 208.14(f)</div>

- Any alien who may be removed to a "safe third country" pursuant to a bilateral or multilateral agreement. As discussed in Section III.P.4 below, the U.S. and Canada currently have an agreement, which restricts access to the asylum system of a partner country for aliens arriving from the other partner country in certain circumstances.

Background information and procedural guidance relating to the prohibitions against filing an asylum application are outlined below.

## 2.    One-Year Filing Deadline

Any asylum applicant who applied for asylum on or after April 1, 1998 (or April 16, 1998, for those applying with USCIS), must establish that he or she filed for asylum within one year from the date of last arrival in the U.S. or establish that he or she is eligible for an exception to the one-year filing requirement based on changed circumstances that materially affect the applicant's eligibility for asylum or extraordinary circumstances directly related to the delay in filing the application. An application with a filing date on or before April 15, 1998, is not subject to the one-year filing deadline as implemented by the Asylum Division. Although April 1, 1998, is the effective date provided by regulation for those who arrived before April 1, 1997, the INS extended an administrative 14-day grace period for applications filed with the INS. This 14-day period only applies to those applications filed in the first 15 days of April 1998.

<div style="float:right; width:20%">INA §§ 208(a)(2)(B), (D) and 8 C.F.R. 208.4(a)(2), (4).</div>

Only an Asylum Officer, IJ, or the BIA is authorized to make the determination of whether the applicant established an exception to the one-year filing deadline. An asylum interview is the method USCIS uses to determine an applicant's eligibility to apply. Therefore, asylum applications are accepted for filing regardless of whether the applicant filed timely.

### a.    Calculating the One-Year Period and Determining the Filing Date

The methods for calculating the one-year period within which the applicant was required to file and determining the filing date and substantive guidance for the adjudication of cases affected by the one-year filing deadline are contained in the AOBTC Lesson Plan *One-Year Filing Deadline*.

Except as indicated above, an assessment to refer based on the one-year filing deadline must reflect that the officer reviewed country conditions to confirm that there has been no change that materially affects the applicant's eligibility for asylum. When country conditions are relevant to the applicant's asylum eligibility, the assessment must contain at least two country conditions citations to support a finding that the applicant has not established an exception based on changed circumstances. The time period covered by the citations is determined on a case-by-case basis, but generally must cover the period beginning 24 months preceding the filing date, and ending on the date of the decision. It is preferable that the two citations be from different sources, however they may be from the same issuing organization or agency if another source cannot be found. These guidelines have been developed as a minimum safeguard to document that, where required, country conditions have been examined for changed circumstances before an application is referred. Certain cases may require a broader review of country conditions or citations to more than two sources. For further guidance on using and citing appropriate country conditions, *see* AOBTC Lesson Plan, *Country Conditions Research and the Resource Information Center (RIC)*.

Although the burden of proof is on the applicant to establish the exception, Asylum Officers must consult country conditions information relevant to the applicant's claim, where appropriate, to determine whether there are changed country conditions that materially affect the applicant's eligibility for asylum. For more discussion about the "cooperative" role of the Asylum Officer and the applicant's burden of proof, *see* AOBTC Lesson Plan, *One-Year Filing Deadline*.

### d.  Date of Entry (DOE) in RAPS

The date of entry is recorded in RAPS according to whether the applicant met his or her burden of proof. Regardless of the claimed manner of entry, whenever the applicant has failed to meet the burden of proof with respect to his or her last arrival date, no date shall be entered into the DOE (Date of Entry) field on the I589 or OSCG screens. When the field is left blank, the words "UNKNOWN DOE" will automatically be printed on the NTA or the I-213 (where applicable). Asylum Officers must address any credibility issues relating to the date of entry in the assessment. For guidance on the applicant's burden of proof and determining the appropriate standards of proof required for entry dates, *see* AOBTC Lesson Plans *One-Year Filing Deadline* and *Asylum Eligibility Part IV – Burden of Proof and Evidence*.

### e.  Preparing the Decision

#### i.  *Applicant Established an Exception*

Asylum Office personnel process the approval, referral, and denial of the application of an applicant who established an exception to the one-year filing deadline in accordance with regular decision procedures. *See* Section II.N, *AO Prepares the Decision*.

#### ii.  *Applicant Did Not Establish an Exception*

Asylum Office personnel process a referral based solely on the one-year filing deadline in accordance with regular referral procedures, except for the entry of the FDEC decision code and the issuance of the referral letter. The decision code for a one-year filing deadline referral is **I5**. The referral letter specific to one-year filing deadline referrals is Appendix 54, *Referral – 1-Year Deadline*.

## 3.  Previous Denial of Asylum by EOIR

### a.    Receiving the I-589

An applicant who was previously denied asylum by an IJ or the BIA (EOIR) may file his or her I-589 with a Service Center or with an Asylum Office directly. An application that has been filed with a Service Center should be forwarded to the Asylum Office having jurisdiction over the applicant's address for input into RAPS.

For further guidance on cases previously denied asylum by EOIR, *see* Langlois, Joseph E. Procedures for Implementing the One-Year Filing Deadline and Processing Cases Previously Denied by EOIR, Memorandum to Asylum Office Directors, et al., 4 January 2002, 14p.

On the same day of receipt, an I-589 initially filed at an Asylum Office is date-stamped and brought to the attention of an SAO or QA/T, depending on local policy. *See* Section II.C.2, *I-589 Filed Directly with the Asylum Office*. The SAO or QA/T determines whether the I-589 fits into one of the categories for which direct filing is permitted. After the SAO or QA/T determines that the applicant is permitted to file directly with the Asylum Office because of a prior denial by EOIR, Asylum Office personnel review it to ensure completeness. An incomplete application should be returned to the applicant with a written explanation of what is missing and instructions to re-submit the application.

When a complete I-589 has been received, Asylum Office personnel check the applicant's personal information against CIS, DACS and RAPS for duplicate A-files. Asylum Office personnel locate and order the applicant's A-file(s), and create a T-file pending receipt. If there is a prior record of the applicant in RAPS, Asylum Office personnel take the following actions on the same day the application was received:

#### i.    Applicant was a Principal on the Prior Application

- Print both pages of the CSTA screen containing the information about the previous asylum application. Place the printouts on the right-hand side of the file.
- Delete the information from the previous asylum application from RAPS using the Reset Interview (REIN) command. Delete the filing date of the previous application using the CORR screen, and enter the new filing date.
- Update biographical and entry information on the I589 screen, if applicable.
- If the Asylum Office that accepts the application is not the same office that adjudicated the previous application, the Asylum Office that has the new application must contact the Asylum Office that adjudicated the previous application to request that it update RAPS as indicated above, and update the MOVE and TRAN screens to transfer the case to the Asylum Office with jurisdiction over the new application.

#### ii.    Applicant was a Dependent on the Prior Application

- Print all pages of the CSTA and CHIS screens and place on the right-hand side of the file.
- Create a new record of the applicant in RAPS as a principal, using the New Case (NEWC) command, in conjunction with the Reset Interview (REIN) command. Delete the filing date of the previous application using the CORR screen, and enter the new filing date.
- Update the biographical and entry information on the I589 screen, if applicable.
- If the Asylum Office that accepts the application is not the same office that adjudicated the previous application, the Asylum Office that has the new application must contact the Asylum Office that adjudicated the previous application to request that it update RAPS as indicated above, and update the MOVE and TRAN screens to transfer the case to the Asylum Office with jurisdiction over the new application.

### b.    Eligibility to Apply

An individual who was previously denied asylum as a principal applicant by an IJ or the BIA (EOIR) may not file a new application for asylum on or after April 1, 1997, unless there are changed circumstances which materially affect the applicant's asylum eligibility. INA Section 208(a)(2)(C), (D); 8 C.F.R. 208.4(a)(3), (4).

*If the applicant was a dependent on a prior I-589 that was denied by the IJ, the prohibition on filing does not apply. 8 C.F.R. 208.14(f)*

A prior denial of asylum by an Asylum Officer does not invoke the prohibition on filing a new asylum application. 8 C.F.R. 208.4(a)(3). An Asylum Office may consider a new affirmative asylum application from an applicant who was previously denied asylum by an Asylum Officer as long as the applicant remains within the jurisdiction of the Asylum Division pursuant to 8 C.F.R. 208.2. New asylum applications filed by applicants previously denied asylum by an Asylum Officer are adjudicated according to regular procedures except that:

- Guidelines regarding case assignment discussed below in this section should be followed whenever practicable; and
- Substantial deference should be accorded to prior determinations made by an Asylum Officer regarding previously established facts, including credibility findings, unless clear error is present.

### c.    Jurisdiction

In most cases in which an applicant is denied asylum by an IJ or the BIA, the Asylum Division does not have jurisdiction over a subsequently filed application, because necessarily a charging document had been served on the applicant and filed with EOIR, which then retains exclusive jurisdiction under 8 C.F.R. 208.2. However, if the applicant left the United States after being denied asylum by EOIR and then returned, the Asylum Division may have jurisdiction to consider an affirmative asylum application filed by that applicant in the following instances:

- applicant was removed from or departed the United States under an order of removal, deportation or exclusion, and subsequently made a **legal** entry
- applicant departed the United States **after the expiration** of a voluntary departure period, thus becoming subject to a deportation or removal order, and subsequently made **legal** entry
- applicant departed the United States **before the expiration** of a voluntary departure period, and subsequently made a **legal or illegal** entry.

These procedures **do not apply** to applicants who entered the United States illegally after having been removed, deported, excluded or after having left the United States while under an order of removal, deportation, or exclusion, and are therefore appear to be subject to reinstatement of the prior order, unless ICE has specifically declined to reinstate the order in a particular case. INA Section 241(a)(5); 8 C.F.R. 241.8. For procedures governing applicants who may be subject to reinstatement of a prior removal order, *see* Section III.S, *Reinstatement of a Prior Order.*

**Examples:**

1. A second A-file is discovered for an applicant. Upon examination of that file, Asylum Office personnel note that it contains a 1995 Immigration Judge order denying asylum and ordering deportation. No appeal was filed. The asylum applicant was lawfully admitted in June 2001 on a B-2 visa, and subsequently filed an affirmative asylum application. The Asylum Office has jurisdiction to consider the new affirmative asylum application because the applicant made a <u>legal</u> entry after departing under the deportation order.

2. During pre-interview preparation, the Asylum Officer discovers a 1989 Immigration Judge order denying asylum and granting voluntary departure. The file contains a record verifying the applicant's timely voluntary departure. The applicant crossed the border illegally into the United States in August, 2001 and applied for asylum. The Asylum Office has jurisdiction to consider the new affirmative asylum application even though the applicant made an illegal entry because the applicant re-entered the U.S. after <u>timely</u> complying with the voluntary departure order.

3. The Asylum Officer discovers through the FBI clearance process that the applicant was denied asylum in 1997 and ordered removed. The applicant claims never to have left the United States, and there is no evidence of departure and subsequent entry. The Asylum Office does <u>not</u> have jurisdiction to consider the new affirmative asylum application because the applicant has not departed and re-entered the U.S. The applicant's asylum application remains under the exclusive jurisdiction of EOIR.

4. A review of the EOIR screen shows that the applicant was previously denied asylum by an Immigration Judge and was granted voluntary departure. The applicant filed an appeal with the Board of Immigration Appeals, which was dismissed some time later. She departed the U.S. after the expiration of the voluntary departure period, and thus became subject to a removal order. She was admitted to the U.S. in April 2001 with a passport she acknowledges is fraudulent. The Asylum Office does <u>not</u> have jurisdiction to consider the new affirmative application because the applicant left the United States under a removal order and the applicant's subsequent entry was not lawful. The applicant may be subject to reinstatement.

### d.    Case Assignment

If the applicant is applying for the second time in the same Asylum Office that issued the prior adverse decision, Asylum Office personnel will make a reasonable attempt to assign the case to the same officer who made the original decision. This is to promote consistency with prior factual determinations and discourage forum shopping through the submission of another asylum application in the absence of changed circumstances. If the same Asylum Officer is unavailable, the case should be assigned to an officer supervised by the same SAO who signed off on the original decision. If the original AO and SAO are unavailable, the case may be randomly assigned according to regular office procedures.

### e.    Interview

In order to determine whether there are changed circumstances that materially affect the applicant's eligibility for asylum, the Asylum Officer interviews the applicant and reviews the record regarding the previous application (including any findings made by EOIR that may be in the file) for a thorough understanding of the basis for the applicant's claim. The focus of the interview reflects the procedural stage of the case in that the Asylum Officer is determining whether there has been a change in circumstances after the decision on the original application, and is not entertaining an appeal of the decision made by EOIR. The Asylum Officer need not re-visit the details of the original asylum claim, unless it is necessary to the determination of asylum eligibility once the applicant has established changed circumstances. Findings of fact made by EOIR, including credibility determinations, must be upheld and cannot be reconsidered. The application of law to the applicant's original case also must be upheld, unless the applicant establishes changed law material to his or her eligibility for asylum. Therefore, the interview focuses on whether any changed circumstances have occurred *after* the applicant was denied asylum by EOIR that may materially affect the applicant's eligibility for asylum, and any information needed to make an asylum eligibility determination if changed circumstances are established.

### f.    Determination and Assessment

Asylum Officers determine whether there are changed circumstances using the same guidance outlined in the AOBTC Basic Training Materials Lesson Plans, *One-Year Filing Deadline* and *Mandatory Bars to Asylum and Discretion*. The entire file, including the prior application, supporting evidence, and previous assessment or decision is reviewed prior to making a determination in the case.

### i.    Applicant Established Changed Circumstances that Materially Affect Asylum Eligibility

If the applicant established changed circumstances that materially affect his or her eligibility for asylum, the Asylum Officer makes a determination of asylum eligibility based on the merits of the claim, keeping in mind that factual determinations made by EOIR may not be reconsidered, and legal determinations must be upheld except to the extent that there has been a change in the law. Regardless of whether the application is denied, referred or approved, the assessment (or *NOID*, if applicable) will contain (in addition to the information specified in the applicable decision template):

- a brief statement that the applicant was previously denied asylum by EOIR,
- an explanation of the changed circumstances established,
- how the changed circumstances materially affect the applicant's asylum eligibility,
- an analysis of the merits of the claim in light of the changed circumstances.

Where the established changed circumstances relate to country conditions, the Asylum Officer must cite to country conditions reports to support the finding.

### ii.    Applicant Did Not Establish Changed Circumstances that Materially Affect Asylum Eligibility

If the applicant did not establish changed circumstances that materially affect his or her eligibility for asylum, the application will be referred or denied based on the prohibition on filing for asylum after a prior denial by EOIR. Asylum Officers are not required to include in the assessment or *NOID* a full account of all material facts or an analysis of the applicant's asylum claim. The assessment or *NOID* must include:

- brief biographical information about the applicant such as age, gender, country(ies) of birth and citizenship; date, place, and manner of last arrival including date status expired, if applicable; and the date the I-589 was filed.
- identification of the protected characteristic(s) (race, religion, nationality, political opinion, or membership in a particular social group) relevant to the applicant's claim and a brief statement of the harm feared (e.g., "Applicant fears he will be persecuted by the LTTE on account of his political opinion.").
- a statement of any circumstances that were considered in the determination of whether the prohibition against filing for asylum applies.
- a statement and an explanation of the finding that there were no changed circumstances, <u>OR</u>, if the applicant established the existence of changed circumstances, why the circumstances were not found to materially affect his or her asylum eligibility.
- Where country conditions are relevant to the determinations of changed circumstances, the assessment must contain a minimum of two country conditions citations supporting the finding that the applicant failed to establish a change in country conditions or that any change in country conditions materially affects the applicant's asylum eligibility. It is preferable that the two citations be from different sources, however they may be from the same issuing organization or agency if another source cannot be found.
- If country conditions information is not relevant to the determination of changed circumstances because it would not materially affect the applicant's asylum eligibility, the AO includes in the assessment the statement, "Any change in country conditions would not materially affect the applicant's eligibility for asylum because (the applicant has not established a protected characteristic, is subject to a mandatory bar, etc.)" and an explanation of the reasons for the finding of no protected characteristic, the bar, or other reason country conditions would not materially affect the applicant's asylum eligibility.

### g.    HQASM/TRAQ Review

HQASM/TRAQ will review and provide feedback on each case involving a prior denial by EOIR before the decision is issued, regardless of whether the case is approved, referred, or a NOID issued. Asylum Office personnel should scan the case documents and e-mail them to the "ASYLUM QA – AFFIRMATIVE" mailbox. If the materials cannot be scanned to a file size of less than 9MB, Asylum Office personnel send them to HQASM/TRAQ via DHL at 20 Massachusetts Ave., NW, Suite 3300, Washington, D.C. 20529. Asylum Office personnel should alert HQASM/TRAQ in advance of any case sent via DHL.

### h.    Preparing the Decision

Asylum Office personnel process the approval, referral, and denial of the application of an applicant who established changed circumstances materially affecting his or her eligibility for asylum after a prior denial by EOIR in accordance with regular decision procedures. *See* Section II.N, *AO Prepares the Decision*.

Asylum Office personnel process a referral or denial based solely on a prior denial by EOIR in accordance with regular decision procedures, except for the PDEC or FDEC decision codes: I6 for out-of-status (FDEC), or D6 for in-status cases (PDEC and FDEC). The referral letter for prior denial cases is Appendix 55, *Referral – Prior Denial*.

## 4.    U.S.-Canada Safe Third Country Agreement – DRAFT



**U.S. Citizenship and Immigration Services**

*Securing America's Promise*

Home > Laws & Regulations > Immigration Handbooks, Manuals, and Policy Guidance

# Immigration Handbooks, Manuals, and Policy Guidance

**Please Note:** The Adjudicator's Field Manual is now available. However, an intermittent problem may cause your browser to return a blank screen when you first access the Manual. If this occurs click "Refresh" or "Reload" on your browser.

This page provides access to those handbooks and manuals that have been approved for release to the public. Additional manuals will be published once they have been cleared for release, and these will be noted below.

We have also added, via the link "Policy Memoranda" on the left, access to released policy and procedural memoranda.

---

Adjudicator's Field Manual

Affirmative Asylum Procedures Manual (1872KB PDF)

E-Verify Users Manual (2505KB PDF)

M-274, Handbook for Employers (3265KB PDF)
Instructions for Completing Form I-9

M-603, USCIS Is Making Photos Simpler (67KB PDF)

Naturalization Eligibility Worksheet (M-480) (312KB PDF)

---

Home | Contact Us | Privacy Policy | Website Policies | PDF Reader | No FEAR | Freedom Of Information Act | USA.gov

U.S. Department of Homeland Security

# U.S. Citizenship and Immigration Services

REFUGEE, ASYLUM, AND
INTERNATIONAL OPERATIONS DIRECTORATE
ASYLUM DIVISION

AFFIRMATIVE ASYLUM PROCEDURES MANUAL

NOVEMBER 2007



One exception to the policy of random assignment is where an asylum applicant was previously denied asylum, but not placed into removal proceedings, and subsequently re-applies in the same office. In such a case, Asylum Office personnel will make a reasonable attempt to assign the case to the same officer who made the original decision. If the same Asylum Officer is unavailable, the case is assigned to another Asylum Officer supervised by the SAO who reviewed the original decision, or if the SAO is no longer with the office, randomly according to regular office procedures.

An AO may not refuse to interview a particular case without cause. Under certain limited circumstances, the AO may feel that it is inappropriate to interview a particular applicant. When this occurs, the AO must obtain SAO approval prior to returning the case for assignment to another AO.

> Check with local Asylum Office management for procedures on returning an assigned case.

Acceptable reasons may include but are not limited to:

- The AO determines that the interpreter is inadequate.
- The applicant specifically requests an AO of a different gender. (A female officer for a female rape victim, for example).

If the AO has a prior personal or professional relationship with the applicant, interpreter, or representative of the case, the AO *must* notify his or her SAO. If there is an actual conflict of interest or the appearance of a conflict of interest, the case will be reassigned to a different AO.

## 5.    AO Prepares for the Interview

*See* AOBTC Basic Training Materials, *Interviewing Part I: Overview of the Nonadversarial Asylum Interview; Interviewing Part III: Eliciting Testimony; Interviewing Part IV: Cross-Cultural Communication;* and *Interviewing Part V: Physical Abuse, Torture and Trauma-Related Conditions.*

## 6.    Delays in Interviewing

An AO begins interviewing the applicant as expeditiously as possible. Asylum Office personnel should explain to the applicant any lengthy anticipated delay.

## 7.    AO Calls the Applicant for the Interview

Asylum Office Directors establish procedures for calling an applicant for the interview by number rather than name, to preserve an applicant's confidentiality in the waiting room.

Examples of acceptable practices include, but are not limited to, the following:

- When appearing for the interview, the applicant is issued one part of a two-part coupon or set of twin tickets with a number printed on both parts. The second part is attached to the file, where it remains until after the decision is served, or a second set of tickets is used on the date of pick-up. The applicant is called using the number on the coupon or ticket.
- The applicant is called using the last three or four digits of the A number. A number is pointed out on appointment mailer, or Asylum Office personnel give the principal applicant a piece of paper with the digits to be called.
- The applicant is given a laminated card with a number that is recorded on a master list and written on the appointment mailer for the interviewing officer or the pick-up notice for the IIO/CR. Interview numbers start daily at "1"; Pick-up numbers start at "101".

> Langlois, Joseph E. Director. Institution of Procedures to Call Applicants for Interview, IDENT or Decision Pick-up By Designated Number, Rather than Name, Memorandum to Asylum Office Directors, 23 February 2001.

## 8.    AO Meets and Greets the Applicant

Certain aliens are not eligible to apply for asylum; however, only an AO or an IJ can make this determination after an interview has been conducted. Therefore, the Service Center and the Asylum Office accept asylum applications without regard to whether a prohibition on filing may apply. *See* Langlois, Joseph E. Procedures for Implementing the One-Year Filing Deadline and Processing Cases Previously Denied by EOIR, Memorandum to Asylum Office Directors, et al., 4 January 2002, 14p.

8 C.F.R. 208.4

## 1.    Categories of Aliens who May not Apply for Asylum

The categories of aliens who are prohibited from filing for asylum are listed below. These prohibitions only apply to an applicant who applies for asylum on or after April 1, 1997:

- Any alien who has not filed an application for asylum within one year of last arrival in the U.S., unless the alien establishes changed circumstances that materially affect his or her eligibility for asylum or extraordinary circumstances directly related to the delay in filing.

- Any alien who previously has been denied asylum as a principal applicant by an Immigration Judge or the BIA (EOIR), unless the alien establishes the existence of changed circumstances that materially affect the applicant's eligibility for asylum.

    If the applicant was a dependent on a prior I-589 that was denied by the IJ or the BIA, the prohibition on filing does not apply. 8 C.F.R. 208.14(f)

- Any alien who may be removed to a "safe third country" pursuant to a bilateral or multilateral agreement. As discussed in Section III.P.4 below, the U.S. and Canada currently have an agreement, which restricts access to the asylum system of a partner country for aliens arriving from the other partner country in certain circumstances.

Background information and procedural guidance relating to the prohibitions against filing an asylum application are outlined below.

## 2.    One-Year Filing Deadline

Any asylum applicant who applied for asylum on or after April 1, 1998 (or April 16, 1998, for those applying with USCIS), must establish that he or she filed for asylum within one year from the date of last arrival in the U.S. or establish that he or she is eligible for an exception to the one-year filing requirement based on changed circumstances that materially affect the applicant's eligibility for asylum or extraordinary circumstances directly related to the delay in filing the application. An application with a filing date on or before April 15, 1998, is not subject to the one-year filing deadline as implemented by the Asylum Division. Although April 1, 1998, is the effective date provided by regulation for those who arrived before April 1, 1997, the INS extended an administrative 14-day grace period for applications filed with the INS. This 14-day period only applies to those applications filed in the first 15 days of April 1998.

INA §§ 208(a)(2)(B), (D) and 8 C.F.R. 208.4(a)(2), (4).

Only an Asylum Officer, IJ, or the BIA is authorized to make the determination of whether the applicant established an exception to the one-year filing deadline. An asylum interview is the method USCIS uses to determine an applicant's eligibility to apply. Therefore, asylum applications are accepted for filing regardless of whether the applicant filed timely.

### a.    Calculating the One-Year Period and Determining the Filing Date

The methods for calculating the one-year period within which the applicant was required to file and determining the filing date and substantive guidance for the adjudication of cases affected by the one-year filing deadline are contained in the AOBTC Lesson Plan *One-Year Filing Deadline.*

Except as indicated above, an assessment to refer based on the one-year filing deadline must reflect that the officer reviewed country conditions to confirm that there has been no change that materially affects the applicant's eligibility for asylum. When country conditions are relevant to the applicant's asylum eligibility, the assessment must contain at least two country conditions citations to support a finding that the applicant has not established an exception based on changed circumstances. The time period covered by the citations is determined on a case-by-case basis, but generally must cover the period beginning 24 months preceding the filing date, and ending on the date of the decision. It is preferable that the two citations be from different sources, however they may be from the same issuing organization or agency if another source cannot be found. These guidelines have been developed as a minimum safeguard to document that, where required, country conditions have been examined for changed circumstances before an application is referred. Certain cases may require a broader review of country conditions or citations to more than two sources. For further guidance on using and citing appropriate country conditions, *see* AOBTC Lesson Plan, *Country Conditions Research and the Resource Information Center (RIC)*.

Although the burden of proof is on the applicant to establish the exception, Asylum Officers must consult country conditions information relevant to the applicant's claim, where appropriate, to determine whether there are changed country conditions that materially affect the applicant's eligibility for asylum. For more discussion about the "cooperative" role of the Asylum Officer and the applicant's burden of proof, *see* AOBTC Lesson Plan, *One-Year Filing Deadline*.

### d.    Date of Entry (DOE) in RAPS

The date of entry is recorded in RAPS according to whether the applicant met his or her burden of proof. Regardless of the claimed manner of entry, whenever the applicant has failed to meet the burden of proof with respect to his or her last arrival date, no date shall be entered into the DOE (Date of Entry) field on the I589 or OSCG screens. When the field is left blank, the words "UNKNOWN DOE" will automatically be printed on the NTA and the I-213 (where applicable). Asylum Officers must address any credibility issues relating to the date of entry in the assessment. For guidance on the applicant's burden of proof and determining the appropriate standards of proof required for entry dates, *see* AOBTC Lesson Plans *One-Year Filing Deadline* and *Asylum Eligibility Part IV – Burden of Proof and Evidence*.

### e.    Preparing the Decision

#### i.    *Applicant Established an Exception*

Asylum Office personnel process the approval, referral, and denial of the application of an applicant who established an exception to the one-year filing deadline in accordance with regular decision procedures. *See* Section II.N, *AO Prepares the Decision*.

#### ii.    *Applicant Did Not Establish an Exception*

Asylum Office personnel process a referral based solely on the one-year filing deadline in accordance with regular referral procedures, except for the entry of the FDEC decision code and the issuance of the referral letter. The decision code for a one-year filing deadline referral is **I5**. The referral letter specific to one-year filing deadline referrals is Appendix 54, *Referral – 1-Year Deadline*.

## 3.    Previous Denial of Asylum by EOIR

### a.    Receiving the I-589

An applicant who was previously denied asylum by an IJ or the BIA (EOIR) may file his or her I-589 with a Service Center or with an Asylum Office directly.  An application that has been filed with a Service Center should be forwarded to the Asylum Office having jurisdiction over the applicant's address for input into RAPS.

For further guidance on cases previously denied asylum by EOIR, *see* Langlois, Joseph E. Procedures for Implementing the One-Year Filing Deadline and Processing Cases Previously Denied by EOIR, Memorandum to Asylum Office Directors, et al., 4 January 2002, 14p.

On the same day of receipt, an I-589 initially filed at an Asylum Office is date-stamped and brought to the attention of an SAO or QA/T, depending on local policy.  *See* Section II.C.2, *I-589 Filed Directly with the Asylum Office*.  The SAO or QA/T determines whether the I-589 fits into one of the categories for which direct filing is permitted.  After the SAO or QA/T determines that the applicant is permitted to file directly with the Asylum Office because of a prior denial by EOIR, Asylum Office personnel review it to ensure completeness.  An incomplete application should be returned to the applicant with a written explanation of what is missing and instructions to re-submit the application.

When a complete I-589 has been received, Asylum Office personnel check the applicant's personal information against CIS, DACS and RAPS for duplicate A-files.  Asylum Office personnel locate and order the applicant's A-file(s), and create a T-file pending receipt.  If there is a prior record of the applicant in RAPS, Asylum Office personnel take the following actions on the same day the application was received:

#### i.    Applicant was a Principal on the Prior Application

- Print both pages of the CSTA screen containing the information about the previous asylum application.  Place the printouts on the right-hand side of the file.
- Delete the information from the previous asylum application from RAPS using the Reset Interview (REIN) command.  Delete the filing date of the previous application using the CORR screen, and enter the new filing date.
- Update biographical and entry information on the I589 screen, if applicable.
- If the Asylum Office that accepts the application is not the same office that adjudicated the previous application, the Asylum Office that has the new application must contact the Asylum Office that adjudicated the previous application to request that it update RAPS as indicated above, and update the MOVE and TRAN screens to transfer the case to the Asylum Office with jurisdiction over the new application.

#### ii.    Applicant was a Dependent on the Prior Application

- Print all pages of the CSTA and CHIS screens and place on the right-hand side of the file.
- Create a new record of the applicant in RAPS as a principal, using the New Case (NEWC) command, in conjunction with the Reset Interview (REIN) command. Delete the filing date of the previous application using the CORR screen, and enter the new filing date.
- Update the biographical and entry information on the I589 screen, if applicable.
- If the Asylum Office that accepts the application is not the same office that adjudicated the previous application, the Asylum Office that has the new application must contact the Asylum Office that adjudicated the previous application to request that it update RAPS as indicated above, and update the MOVE and TRAN screens to transfer the case to the Asylum Office with jurisdiction over the new application.

### b.    Eligibility to Apply

An individual who was previously denied asylum as a principal applicant by an IJ or the BIA (EOIR) may not file a new application for asylum on or after April 1, 1997, unless there are changed circumstances which materially affect the applicant's asylum eligibility.  INA Section 208(a)(2)(C), (D); 8 C.F.R. 208.4(a)(3), (4).

> If the applicant was a dependent on a prior I-589 that was denied by the IJ, the prohibition on filing does not apply.  8 C.F.R. 208.14(f)

A prior denial of asylum by an Asylum Officer does not invoke the prohibition on filing a new asylum application.  8 C.F.R. 208.4(a)(3).  An Asylum Office may consider a new affirmative asylum application from an applicant who was previously denied asylum by an Asylum Officer as long as the applicant remains within the jurisdiction of the Asylum Division pursuant to 8 C.F.R. 208.2.  New asylum applications filed by applicants previously denied asylum by an Asylum Officer are adjudicated according to regular procedures except that:

- Guidelines regarding case assignment discussed below in this section should be followed whenever practicable; and
- Substantial deference should be accorded to prior determinations made by an Asylum Officer regarding previously established facts, including credibility findings, unless clear error is present.

### c.    Jurisdiction

In most cases in which an applicant is denied asylum by an IJ or the BIA, the Asylum Division does not have jurisdiction over a subsequently filed application, because necessarily a charging document had been served on the applicant and filed with EOIR, which then retains exclusive jurisdiction under 8 C.F.R. 208.2.  However, if the applicant left the United States after being denied asylum by EOIR and then returned, the Asylum Division may have jurisdiction to consider an affirmative asylum application filed by that applicant in the following instances:

- applicant was removed from or departed the United States under an order of removal, deportation or exclusion, and subsequently made a **legal** entry
- applicant departed the United States **after the expiration** of a voluntary departure period, thus becoming subject to a deportation or removal order, and subsequently made **legal** entry
- applicant departed the United States **before the expiration** of a voluntary departure period, and subsequently made a **legal or illegal** entry.

These procedures **do not apply** to applicants who entered the United States illegally after having been removed, deported, excluded or after having left the United States while under an order of removal, deportation, or exclusion, and are therefore appear to be subject to reinstatement of the prior order, unless ICE has specifically declined to reinstate the order in a particular case.  INA Section 241(a)(5); 8 C.F.R. 241.8.  For procedures governing applicants who may be subject to reinstatement of a prior removal order, *see* Section III.S, *Reinstatement of a Prior Order.*

**Examples:**

1.   A second A-file is discovered for an applicant.  Upon examination of that file, Asylum Office personnel note that it contains a 1995 Immigration Judge order denying asylum and ordering deportation.  No appeal was filed.  The asylum applicant was lawfully admitted in June 2001 on a B-2 visa, and subsequently filed an affirmative asylum application.  The Asylum Office has jurisdiction to consider the new affirmative asylum application because the applicant made a <u>legal</u> entry after departing under the deportation order.

2.   During pre-interview preparation, the Asylum Officer discovers a 1989 Immigration Judge order denying asylum and granting voluntary departure.  The file contains a record verifying the applicant's timely voluntary departure.  The applicant crossed the border illegally into the United States in August, 2001 and applied for asylum.  The Asylum Office has jurisdiction to consider the new affirmative asylum application even though the applicant made an illegal entry because the applicant re-entered the U.S. after <u>timely</u> complying with the voluntary departure order.

3.   The Asylum Officer discovers through the FBI clearance process that the applicant was denied asylum in 1997 and ordered removed.  The applicant claims never to have left the United States, and there is no evidence of departure and subsequent entry.  The Asylum Office does <u>not</u> have jurisdiction to consider the new affirmative asylum application because the applicant has not departed and re-entered the U.S.  The applicant's asylum application remains under the exclusive jurisdiction of EOIR.

4.   A review of the EOIR screen shows that the applicant was previously denied asylum by an Immigration Judge and was granted voluntary departure.  The applicant filed an appeal with the Board of Immigration Appeals, which was dismissed some time later.  She departed the U.S. after the expiration of the voluntary departure period, and thus became subject to a removal order.  She was admitted to the U.S. in April 2001 with a passport she acknowledges is fraudulent.  The Asylum Office does <u>not</u> have jurisdiction to consider the new affirmative application because the applicant left the United States under a removal order and the applicant's subsequent entry was not lawful.  The applicant may be subject to reinstatement.

    **d.**    **Case Assignment**

If the applicant is applying for the second time in the same Asylum Office that issued the prior adverse decision, Asylum Office personnel will make a reasonable attempt to assign the case to the same officer who made the original decision.  This is to promote consistency with prior factual determinations and discourage forum shopping through the submission of another asylum application in the absence of changed circumstances.  If the same Asylum Officer is unavailable, the case should be assigned to an officer supervised by the same SAO who signed off on the original decision.  If the original AO and SAO are unavailable, the case may be randomly assigned according to regular office procedures.

    **e.**    **Interview**

In order to determine whether there are changed circumstances that materially affect the applicant's eligibility for asylum, the Asylum Officer interviews the applicant and reviews the record regarding the previous application (including any findings made by EOIR that may be in the file) for a thorough understanding of the basis for the applicant's claim. The focus of the interview reflects the procedural stage of the case in that the Asylum Officer is determining whether there has been a change in circumstances after the decision on the original application, and is not entertaining an appeal of the decision made by EOIR. The Asylum Officer need not re-visit the details of the original asylum claim, unless it is necessary to the determination of asylum eligibility once the applicant has established changed circumstances. Findings of fact made by EOIR, including credibility determinations, must be upheld and cannot be reconsidered. The application of law to the applicant's original case also must be upheld, unless the applicant establishes changed law material to his or her eligibility for asylum. Therefore, the interview focuses on whether any changed circumstances have occurred <u>after</u> the applicant was denied asylum by EOIR that may materially affect the applicant's eligibility for asylum, and any information needed to make an asylum eligibility determination if changed circumstances are established.

### f.    Determination and Assessment

Asylum Officers determine whether there are changed circumstances using the same guidance outlined in the AOBTC Basic Training Materials Lesson Plans, *One-Year Filing Deadline* and *Mandatory Bars to Asylum and Discretion*. The entire file, including the prior application, supporting evidence, and previous assessment or decision is reviewed prior to making a determination in the case.

#### i.    Applicant Established Changed Circumstances that Materially Affect Asylum Eligibility

If the applicant established changed circumstances that materially affect his or her eligibility for asylum, the Asylum Officer makes a determination of asylum eligibility based on the merits of the claim, keeping in mind that factual determinations made by EOIR may not be reconsidered, and legal determinations must be upheld except to the extent that there has been a change in the law. Regardless of whether the application is denied, referred or approved, the assessment (or *NOID*, if applicable) will contain (in addition to the information specified in the applicable decision template):

- a brief statement that the applicant was previously denied asylum by EOIR,
- an explanation of the changed circumstances established,
- how the changed circumstances materially affect the applicant's asylum eligibility,
- an analysis of the merits of the claim in light of the changed circumstances.

Where the established changed circumstances relate to country conditions, the Asylum Officer must cite to country conditions reports to support the finding.

#### ii.    Applicant Did Not Establish Changed Circumstances that Materially Affect Asylum Eligibility

If the applicant did not establish changed circumstances that materially affect his or her eligibility for asylum, the application will be referred or denied based on the prohibition on filing for asylum after a prior denial by EOIR. Asylum Officers are not required to include in the assessment or *NOID* a full account of all material facts or an analysis of the applicant's asylum claim. The assessment or *NOID* must include:

- brief biographical information about the applicant such as age, gender, country(ies) of birth and citizenship; date, place, and manner of last arrival including date status expired, if applicable; and the date the I-589 was filed.
- identification of the protected characteristic(s) (race, religion, nationality, political opinion, or membership in a particular social group) relevant to the applicant's claim and a brief statement of the harm feared (e.g., "Applicant fears he will be persecuted by the LTTE on account of his political opinion.").
- a statement of any circumstances that were considered in the determination of whether the prohibition against filing for asylum applies.
- a statement and an explanation of the finding that there were no changed circumstances, OR, if the applicant established the existence of changed circumstances, why the circumstances were not found to materially affect his or her asylum eligibility.
- Where country conditions are relevant to the determinations of changed circumstances, the assessment must contain a minimum of two country conditions citations supporting the finding that the applicant failed to establish a change in country conditions or that any change in country conditions materially affects the applicant's asylum eligibility. It is preferable that the two citations be from different sources, however they may be from the same issuing organization or agency if another source cannot be found.
- If country conditions information is not relevant to the determination of changed circumstances because it would not materially affect the applicant's asylum eligibility, the AO includes in the assessment the statement, "Any change in country conditions would not materially affect the applicant's eligibility for asylum because (the applicant has not established a protected characteristic, is subject to a mandatory bar, etc.)" and an explanation of the reasons for the finding of no protected characteristic, the bar, or other reason country conditions would not materially affect the applicant's asylum eligibility.

### g.    HQASM/TRAQ Review

HQASM/TRAQ will review and provide feedback on each case involving a prior denial by EOIR before the decision is issued, regardless of whether the case is approved, referred, or a NOID issued. Asylum Office personnel should scan the case documents and e-mail them to the "ASYLUM QA – AFFIRMATIVE" mailbox. If the materials cannot be scanned to a file size of less than 9MB, Asylum Office personnel send them to HQASM/TRAQ via DHL at 20 Massachusetts Ave., NW, Suite 3300, Washington, D.C. 20529. Asylum Office personnel should alert HQASM/TRAQ in advance of any case sent via DHL.

### h.    Preparing the Decision

Asylum Office personnel process the approval, referral, and denial of the application of an applicant who established changed circumstances materially affecting his or her eligibility for asylum after a prior denial by EOIR in accordance with regular decision procedures. *See* Section II.N, *AO Prepares the Decision*.

Asylum Office personnel process a referral or denial based solely on a prior denial by EOIR in accordance with regular decision procedures, except for the PDEC or FDEC decision codes: I6 for out-of-status (FDEC), or D6 for in-status cases (PDEC and FDEC). The referral letter for prior denial cases is Appendix 55, *Referral – Prior Denial*.

## 4.    U.S.-Canada Safe Third Country Agreement – DRAFT