UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHENGLI ZHANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Act. No. 07-1209 (RWR) |
| ) | |
| MICHAEL CHERTOFF, ) | |
| Secretary, Department of ) | |
| Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff has failed to address the fact that this Court is without jurisdiction pursuant to 8 U.S.C. § 1252(g) and that exclusive jurisdiction of this asylum matter rests with the Court of Appeals. Moreover, even if this Court has jurisdiction, Plaintiff is mis-informed as to the procedure to be used for the Defendants to review his new application now that he is under an order of removal. See Exhibit C attached to Defendants' Cross Motion for Summary Judgment (CMSJ).

This Court has no jurisdiction to review any removal-related claim for any alien, criminal or non-criminal. 8 U.S.C. § 1252(g). However, where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the court's future jurisdiction is likewise subject to the exclusive jurisdiction of the appellate court. Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("TRAC"). If there is any review to be had by any Court, it should be the First Circuit Court of Appeals. See 8 U.S.C. §§ 1252 (a) (1) & (5). Plaintiff has failed to rebut the jurisdictional argument. Accordingly, Defendant's CMSJ should be granted. See Buggs v. Powell, 293 F.Supp.2d 135, 141 (D.D.C.

2002); Nails v. England, 311 F.Supp.2d 116, 122 (D.D.C. 2004) (Roberts, J.)

     Moreover, even if this court had jurisdiction, an order of mandamus could not be issued because the Plaintiff has failed to comply with the direction of the US Citizenship and Immigration Services USCIS and file a motion to reopen or reconsideration before the Immigration Judge (IJ) that issued the Notice of Removal.  See Letter of Thomas McCarthy, Vermont Service Center, USCIS, attached to CMSJ as Exhibit C.  Plaintiff argues instead that he is not compelled to follow the Agency's advice because USCIS is ignorant of its own history, processes and rules.  For this proposition he cites exhaustively to the Affirmative Asylum Procedures Manual [Manual]; Notwithstanding that the Manual clearly states that "an asylum applicant may apply for asylum after the issuance of a final denial, or dismissal of a motion to reopen or reconsider by the asylum office *as long as he or she is not under the jurisdiction of the Immigration Court. . .*" (Emphasis added).  See Manual (2007) p. 8 at ¶ c.[1]

     In addition, the 2007 Manual excepts certain procedures of USCIS when the applicant is under an order of removal and under the jurisdiction of the immigration court.  The 2007 Manual

---

[1] The Affirmative Asylum Procedures Manual, of the Office of International Affairs, Asylum Division ( November 2007) (Manual) attached hereto as Exhibit D.  The same provision is in the February 2003 Manual, which is attached to Plaintiff's Motion for Summary Judgment as Exhibit 3.

at p. 128 states the following:

> 3. **Previous Denial of Asylum by EOIR**[2]
>
>    c. **Jurisdiction**
>
> <u>In most cases in which an applicant is denied asylum by an IJ or the BIA, the Asylum Division does not have jurisdiction over a subsequently filed application, because necessarily a charging document had been served on the applicant and filed with EOIR, which then retains exclusive jurisdiction</u> under 8 C.F.R. 208.2. . . .
>
> **Examples:**
>
> . . . .
>
> 3. The Asylum Officer discovers through the FBI clearance process that the applicant was denied asylum in 1997 and oredered removed. The applicant claims never to have left the United States, and there is no evidence of departure and subsequent entry. <u>The Asylum Office does not have jurisdiction to consider the new affirmative asylum application because the applicant has not departed and re-entered the U.S. The applicant's asylum application remains under the exclusive jurisdiction of the EOIR.</u>
>
> . . . .

<u>See</u>: USCIS, Refugee, Asylum, and International Operations Directorate Asylum Division, Affirmative Asylum Procedures Manual, November 2007, p. 128 (2007 manual), attached as Exhibit 2. Because there is no indication that Plaintiff has left the United States, the Asylum Office or USCIS has no jurisdiction over Plaintiff's second asylum application.

## CONCLUSION

     For the foregoing reasons, the Defendants' Cross Motion for Summary Judgment should be granted and the Plaintiff's Motion for Summary Judgment denied.

---

[2] EOIR is an acronym for the Executive Office for Immigration Review. The Immigration Court and the Board of Immigration appeals is a part of the EOIR. <u>See</u> 8 CFR 1003.0 - 1003.11. The EOIR is a part of the Department of Justice.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, Esq. D.C. Bar # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
U.S. Attorney's Office
Judiciary Center Building
555 Fourth Street, NW
Suite 4-4808
Washington, D.C. 20530
(202) 305-1334
Counsel for Defendants

Exhibit D

# U.S. Citizenship and Immigration Services

REFUGEE, ASYLUM, AND
INTERNATIONAL OPERATIONS DIRECTORATE
ASYLUM DIVISION

AFFIRMATIVE ASYLUM PROCEDURES MANUAL

NOVEMBER 2007



Exhibit D

Asylum Office personnel use the Department of State's CCD to obtain information about the identity, previous travel history, method of entry into the United States, or background of an asylum applicant. Asylum Office personnel access the CCD through a secure web-based system. For more information on the CCD and for instructions on how to access the database, see Langlois, Joseph E. <u>Asylum Division Access to the Department of State's Consular Consolidated Database and Use of Consular Affairs Visa Data in Asylum Adjudications</u>, Memorandum for Asylum Office Directors and Deputy Directors, 6 October 2006, 3p.

## II. THE AFFIRMATIVE ASYLUM APPLICATION

## A. ALIEN OBTAINS ASYLUM APPLICATION PACKET

### 1. How to Obtain

8 C.F.R. 208.3

Prospective asylum applicants may obtain an asylum packet by:

- Calling the USCIS forms request line: 1-800-870-FORM (3676).
- Requesting the packet in person at a USCIS District Office.
- Requesting the packet in person or by mail from an Asylum Office.
- Requesting the packet from a member of the private immigration bar or an agency accredited by the Board of Immigration Appeals (BIA).
- Downloading the form from the USCIS public Internet site at http://uscis.gov.

USCIS does not charge a fee to provide an asylum packet to a prospective applicant; however, a fee may be charged to an attorney or representative if he or she orders large quantities.

### 2. Asylum Packet Contents

An asylum packet consists of:

- The most recent acceptable version of the Form I-589, *Application for Asylum and for Withholding of Removal*
- Form AR-11: *Alien Change Of Address*
- Notice of Counsel and Consequences of Filing
- Executive Office for Immigration Review (EOIR) Representative List

### 3. What Applicant Must File

At a minimum, an applicant must submit the following to apply for asylum:

- Original I-589, which is completed in English and signed by the applicant and preparer, if any.
- Two (2) copies of the completed and signed I-589.
- One (1) passport-style photograph.

If an applicant has a spouse or child in the U.S. who wants to be included as a dependent on the I-589, an applicant must also submit the following <u>for each dependent</u>:

- One (1) copy of his or her asylum application that includes the dependent's information.
- At a minimum, an applicant is permitted to submit only copies of pages 1, 2, 3, and 9 (including Supplement A Form I-589 as needed for additional family members) of the principal applicant's application in lieu of the entire I-589 and supplemental documentation.
- One (1) photograph of the dependent that he or she wants to add, stapled on page 9 of the dependent's copy.
- One (1) copy of evidence of relationship:
- A marriage certificate, if the dependent is a spouse.
- A divorce decree, if the principal applicant or spouse was previously married.
- A birth certificate, if the dependent is a child.

<small>"Original I-589" is an I-589 with the original signature plus any supplemental sheets and/or statements.</small>

If a principal applicant does not have and is unable to obtain a marriage or birth certificate, he or she may submit a copy of secondary evidence of relationship. Secondary evidence may take the form of historical evidence; such evidence must have been issued contemporaneously with the event that it documents and may include, but is not limited to, medical records, school records and religious documents. Affidavits may also be accepted.

<small>8 C.F.R. 204.2(d)(2)(v) discusses secondary evidence to support a petition for child or son or daughter.</small>

If an affidavit is the secondary evidence, the principal applicant must submit one (1) original and two (2) copies of an affidavit from at least one (1) person for each event the principal applicant is trying to prove. A relative or other person may provide an affidavit, and he or she need not be a United States citizen or lawful permanent resident. An affidavit must:

- Fully describe the circumstances or event in question and fully explain how the affiant acquired knowledge of the event(s).
- Be sworn to, or affirmed by, a person who was alive at the time of the event(s) and have personal knowledge of the event(s) (date and place of birth, marriage, etc.) that the principal applicant is trying to prove.
- Show the full name, address, date and place of birth of the affiant, and indicate the relationship between him or her and the principal applicant

## B. APPLICANT FILES I-589

### 1. Filing with the Service Centers

An applicant mails his or her I-589 and any supporting documentation to the appropriate Service Center, determined by the applicant's address. A list of Service Centers and the areas they service are outlined in the I-589.

<small>The term "I-589" refers to a Form I-589 and any supporting documentation.</small>

### 2. Filing Directly with the Asylum Offices

An asylum applicant may file his or her I-589 with the Asylum Office at the express consent of the Asylum Office Director or when a principal/dependent relationship has ceased to exist and the former dependent is filing an asylum application as a principal. *See* 8 C.F.R. 208.5(b)(2). A Directors' consent to file in the local office is normally given under the following circumstances:

<small>Check with local Asylum Office management for a list of all cases that may be directly filed.</small>

- Expeditious processing is required.
- Previously denied or withdrawn asylum application where the applicant was not placed into deportation, exclusion or removal proceedings.

# C.   USCIS RECEIVES I-589

## 1.   I-589 Filed with the Service Center

The Service Center is responsible for:

- Receiving and receipting an I-589.
- Verifying that USCIS has jurisdiction over the case by checking available databases for duplicate filings and multiple alien-numbers (A-numbers) or for evidence that the applicant is/has been in proceedings. *See Section III.L below for more information on jurisdiction.*
- Matching an I-589 with already existing alien-files (A-files) where they exist.
- Creating a new A-file where there is no prior A-file for the asylum applicant.
- Entering the I-589 into RAPS and forwarding the file to the appropriate Asylum Office.

## 2.   I-589 Filed Directly with the Asylum Office

An Asylum Office processes a direct filing of an I-589 as follows:

### a.   Mailroom Processing

On the same day of receipt, Asylum Office personnel stamp the I-589 with the date of receipt and bring it to the attention of a Supervisory Asylum Officer (SAO) or QA/T, depending upon local policy. The SAO or QA/T determines whether the I-589 fits into one of the categories for which a direct filing is permitted and reviews the I-589 to ensure it meets the specifications for completeness. If an I-589 is erroneously filed with the Asylum Office or incomplete, Asylum Office personnel return it to the applicant with written instructions indicating the corrective action that the applicant must take in order to properly file the application.

### b.   Computer Entries

No information is entered in USCIS databases until it is determined that the I-589 is properly filed with the Asylum Office and that the I-589 meets the specifications for completeness. Once the I-589 has been reviewed and found properly filed (i.e., the Asylum Office has jurisdiction) and complete, Asylum Office personnel enter the application into RAPS on the Case Entry (I589) screen within one business day of receipt. Asylum Office personnel first check the applicant's personal information against information in CIS, DACS, and RAPS for duplicate files. If none exist, Asylum Office personnel create an A-file by assigning the applicant an A-number, and entering the information into RAPS. If an A-file already exists, Asylum Office personnel order the A-file and create a Temporary File (T-file).

*For further information on creating an A-File, see Records Operations Handbook (M-407), chapter 2, Available on USCIS Online Plus at http://ors.uscis.dhs.gov/roh/.*

*See Section III.L below for more information on jurisdiction.*

The name of an applicant who has only one name is entered into RAPS, CIS or other system as a last name. In the first name field, enter "No Given Name." Dependents are added using the F10 ("Add Rel") function key.

Asylum Office personnel send a copy of the I-589 to State Department's Bureau of Democracy, Human Rights, and Labor (DRL) in accordance with Section II.L.2 of this manual, *AO Sends a Copy of I-589 Sent to DRL, if not Previously Sent.* For high-profile cases, Headquarters Asylum (HQASM) will forward an additional copy of the I-589 to DRL with the assessment when the decision is submitted for HQASM/TRAQ review.

### c.   Accepting a New I-589 After Denial or Withdrawal of a Previous Application

An asylum applicant may apply for asylum after the issuance of a final denial, or dismissal of a motion to reopen or reconsider by the Asylum Office as long as he or she is not under the jurisdiction of the Immigration Court. An applicant who withdrew an asylum application may also submit a new application, as long as the Asylum Office has jurisdiction to hear the claim.

<small>A withdrawn asylum application cannot be reopened, except as provided in the *ABC-NACARA Procedures Manual* for rescission cases.</small>

Although the applicant may file a new asylum application, he or she is subject to the prohibitions on filing for asylum outlined in INA Section 208(a)(2)(A), (B) or (C).

<small>*See* Section III.P on prohibitions on filing.</small>

### i. Submission of a New Asylum Application

At this time, the Service Centers are not equipped to receipt applications where RAPS shows a final disposition of the case. An applicant must, therefore, file directly with the Asylum Office having jurisdiction over his or her place of residence. Applications received at the Service Center are forwarded to the Asylum Office for processing.

### ii. RAPS Entries

When an applicant files the new I-589, Asylum Office personnel locate the A-file that contained the previous asylum application. When this occurs, Asylum Office personnel take the following actions in RAPS:

- Print the CSTA screen that contains the information about the previously-filed asylum application. Place the printout on the right-hand side of the file.
- Delete the information from the previously-filed asylum application from RAPS using the Re-interview (REIN) command. Delete the filing date of the previous application using the Case Correction (CORR) screen, and enter the new filing date.
- If the Asylum Office that accepts the application is not the same office that adjudicated the previous application, the Asylum Office that has the new application must contact the Asylum Office that adjudicated the previous application to delete the information from RAPS, and update the Address Change (MOVE)/Case Transfer (TRAN) screens.

### iii. Interview and Adjudication

A newly-filed I-589 receives a new interview and adjudication by an Asylum Officer (AO), and the prohibitions on filing are explored during the asylum interview. Prohibitions on filing for asylum, including the one-year filing deadline and prohibition on filing after a prior denial by EOIR, are discussed below, Section III.P, *Prohibitions on Filing an Asylum Application*. A prior denial by USCIS or INS does not invoke the prohibition on filing. The AO may consider the interview notes and *Assessment* from the previous application to develop lines of inquiry during the asylum interview. Findings of fact and law made by USCIS or INS in the prior adjudication should not be disturbed, absent error or a change in circumstances.

### d. Prior Dependent Filing as a Principal Applicant – DRAFT

The principal applicant who was previously a dependent on another asylum application files a Form I-589 directly with the Asylum Office having jurisdiction over his or her place of residence.

Asylum Office personnel locate the former dependent's A-file and perform the necessary RAPS updates/changes to make the dependent a principal applicant in the system. The Create New Case for Dependent (NEWC) command may be used in RAPS to convert the former dependent into a principal record in RAPS. If the former dependent now lives in the jurisdiction of an Asylum Office other than that which received the prior application, Asylum Office personnel coordinate with the owning office to complete the necessary RAPS commands. Asylum Office personnel: